IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–01991–WYD–KMT


JACOB DANIEL OAKLEY,

     Plaintiff,

v.

ARISTEDES W. ZAVARES, Executive Director, D.O.C.,
SUSAN JONES, Warden, CSP,
WILLIAM RICHTER #5, COPD BD, of Discipline,
POCHECHO #4, COPD BD, of Discipline
JOHN OR JANE DOE #6, Inmate Banking Chain of Command,
JOHN OR JANE DOE #7, Inmate Banking Chain of Command,
JOHN OR JANE DOE #8, Inmate Banking Chain of Command,
JOHN OR JANE DOE #9, Inmate Banking Chain of Command,
P. HUNTER, Inmate Banking Chain of Command,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This case involves claims that Defendants violated Plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments. The matter comes before the court on "Defendants' Motion to Dismiss Plaintiff's Third Amended Prisoner Complaint" (Doc. No. 47 [Mot.]) and Plaintiff's Response (Doc. No. 51 [Resp.]). Plaintiff asserts jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. For the reasons that follow, the court recommends that Defendants' motion to dismiss be granted in part.

## STATEMENT OF THE CASE

The following account is taken from Plaintiff's Third Amended Complaint (Doc. No. 24 [Third Amend. Compl.]), Defendants' Motion and Plaintiff's Response. Plaintiff is incarcerated at the Colorado State Penitentiary (CPS), within the Colorado Department of Corrections (CDOC). (Mot. at 1.) He asserts various claims relating to restitution orders that resulted from unspecified disciplinary convictions. (*Id.*) In Claim One, Plaintiff alleges that Defendants violated his due process rights under the Fifth and Fourteenth Amendments by ordering restitution as sanction for the disciplinary convictions. (Third Amend. Compl. at 8-21.)[1] In Claim Two, Plaintiff alleges that the restitution withdrawals from his inmate banking account violate the "takings clause" because he was not afforded due process. (*Id.* at 22.) He also suggests that this constitutes cruel and unusual punishment under the Eighth Amendment. (*Id.*) Finally, in Claim Three, Plaintiff alleges that the garnishment of money from his prison account is illegal and violates his due process rights. (*Id.* at 23.)

Plaintiff seeks the "termination of illegal COPD restitution penalties, . . . an injunction to stop the taking of my money for illegal restitution," actual damages for "any and all money taken for [COPD disciplinary restitution] payments; in addition for [sic] punitive damages to increase the amount DOC owes me to six time [sic] the amount taken from me orriginally [sic]," and "$850,000

---

[1] Despite previous admonishments from the court that Plaintiff file a short and concise statement of his claims on a court-approved form, Plaintiff's Third Amended Complaint is unwieldy. It is filed, in part, on the court-approved "Prisoner Complaint" form. However, Plaintiff inserted excerpts from a previous amended complaint throughout the Third Amended Complaint, resulting in a document that is difficult to decipher. For citation purposes, the court will use the consecutive pagination provided upon filing in CM/ECF.

in punitive damages to help me pay any and all court ordered restitutions, filing fees, allso [sic] for other additional purposes." (*Id.* at 25 (brackets in original).)

Defendants move to dismiss on the grounds that 1) Defendants, in their official capacities, are entitled to Eleventh Amendment immunity; 2) Plaintiff's takings clause claim cannot be brought under § 1983; 3) Plaintiff failed to state a cognizable Eighth Amendment claim; 4) Plaintiff failed to state a cognizable due process claim under the Fourteenth Amendment; 5) Plaintiff failed to allege facts showing personal participation by Defendants Zavaras, Jones and Decesaro;[2] 6) Plaintiff's claim for compensatory damages is barred by the Prison Litigation Reform Act (PLRA); and 7) Defendants, in their individual capacities, are entitled to qualified immunity. (Mot. at 4-13.)

## PROCEDURAL HISTORY

On November 23, 2009, Plaintiff filed a "Prisoner Complaint." (Doc. No. 24.) This complaint, which Defendants refer to as Plaintiff's Third Amended Complaint, is the operative complaint in this suit.[3] Defendants filed their motion to dismiss on March 15, 2010. Plaintiff filed his response on April 5, 2010. Defendants did not file a reply. The matter is ripe for review and recommendation.

---

[2] Defendant Decesaro was voluntarily dismissed on July 15, 2010, after Defendants had filed their motion to dismiss. (*See* Doc. No. 81.)

[3] In his request for relief, Plaintiff asks the court to "combine all previous complaints filed and join them together . . . ." (Third Amend. Compl. at 25.) In his response brief, Plaintiff refers to claims from previous complaints, including claims for conspiracy and fraud. (*See* Resp. at 1.) The court will not consider any previous complaints. Plaintiff was given three opportunities to amend his compliant to comply with Rule 8 and the court's local rules. Each amended complaint supersedes the previous complaint, making his Third Amended Complaint the only operative complaint in this action. *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.")

## STANDARD OF REVIEW

*1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

*2.*     *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* (citations omitted).

### 3.      *Failure to State a Claim Upon Which Relief Can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies the allegations in the complaint that are not entitled to the assumption of truth, that is,

those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949-51.

Second, the Court considers the factual allegations "to determine if they plausibly suggest an

entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim

survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual

averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Moreover,

"[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause

of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (citations omitted).

## ANALYSIS

### 1.    *Eleventh Amendment Immunity*

The Eleventh Amendment to the United States Constitution states: "The Judicial power of

the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen

against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir.

1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer, v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity applies whether the relief sought is legal or equitable.  *Johns*, 57 F.3d at 1552.  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  However, claims for injunctive and declaratory relief may, in some circumstances, proceed against an official in his or her official capacity.  *Id.*  Whether the Eleventh Amendment provides immunity on a claim for injunctive or declaratory relief depends on whether the relief sought is truly prospective.  *Id.* at 1258-59.  If the relief sought is actually retrospective, it is barred by the Eleventh Amendment.  *Id.*

Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages or retrospective equitable relief are persons within the meaning of § 1983.[4]  *Will*, 491 U.S. at 70-71.

Defendants assert that, to the extent they are being sued in their official capacities, they are entitled to Eleventh Amendment immunity.  (Mot. at 4-5.)  On this bases, they urge dismissal of all claims against Defendants in their official capacities for declaratory relief and actual damages.  (*Id.*

---

[4] "A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Will*, 491 U.S. at 71 n.10 (citations and quotations omitted).

at 5.)  Plaintiff's response is confusing.  He first insists that he has sued the Defendants in both their individual and official capacities.  (Resp. at 2.)  He then states that the court

> should strongly consider that I did [not] [clearly] [state] in [detail] what damages are for, or and [under] what [capacity].  It is unprofessional for their council [sic] to deliberately [a]ss[u][me] in hope [sic] to get those damages dismissed under the 11th amend. by asserting that I asked for them damages [sic] under the "official immunity clause" when [under what capacity] was never mention [sic] in my complaint except in one paragraph in one sentence.

(*Id.* (brackets in original).)  He goes on to explain that he is suing Defendants in their official capacities for injunctive and declaratory relief in the form of a decision explaining his legal rights to the money in his prison account and the calculation that governs the amount Defendants are allowed to withdraw as restitution.  (*Id.*)

To the extent Plaintiff seeks monetary relief from Defendants in their official capacities, the Eleventh Amendment shields them from liability, and the court lacks jurisdiction over Plaintiff's claims.  *See Starkey ex rel. A.B. v. Boulder Cnty. Soc. Serv.*, 569 F.3d 1244, 1260 (10th Cir. 2009) (noting jurisdictional nature of Eleventh Amendment sovereign immunity).  However, to the extent Plaintiff seeks prospective injunctive and declaratory relief, including an injunction against future withdrawals from his prison account and a declaration regarding the proper calculation for restitution withdrawals, the Eleventh Amendment does not bar such claims.  Nor does it bar claims against Defendants in their individual capacities for monetary or equitable relief.

## 2.     *Due Process Claim*

Plaintiff appears to assert a procedural due process claim relating to unspecified disciplinary convictions that resulted in restitution orders.[5]  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  To maintain a procedural due process claim, Plaintiff must prove that 1) the State deprived him of a constitutionally cognizable liberty or property interest and 2) the procedures attendant to that deprivation were not constitutionally sufficient.  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Defendants do not dispute that an inmate has a constitutionally protected property interest in the funds in his inmate account.[6]  (*See* Mot. at 9 (citing *Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir. 1989)).)  However, they claim that Plaintiff was afforded adequate procedure in the prison disciplinary proceedings.  (*Id.* at 9-11.)  Plaintiff appears to argue that his due process rights were

---

[5] Plaintiff's challenge to the restitution orders has two aspects.  In addition to arguing that the orders were issued without due process, he also argues that Defendants lacked authority to issue restitutions orders. (*See* Third Amend. Compl. at 8-16.)  The argument appears related to Plaintiff's assertions that due process requires procedural protections inherent in a criminal trial.  (*See id.* at 10, 16.)  In other words, Plaintiff believes that restitution may only be ordered following a proceeding in a court of law.  (*See id.* at 11, 16.) Tellingly, Plaintiff cites Colorado Revised Statute 16-18.5-106 which governs restitution, while confined to the CDOC, for court ordered fines.  (*Id.* at 12.)  Clearly, the CDOC has authority to manage its prisons.  *See Reeves v. Colo. Dept. of Corr.*, 155 P.3d 648, 651 (Colo. App. 2007) (citing Colo. Rev. Stat. §§ 17-1-203, 111).  "Absent a statutory or constituutional violation, courts generally do not intervene in matters of prison administration and defer to the DOC in the management of penal institutions."  *Id.*  Plaintiff has not argued that the CDOC's Code of Penal Discipline is unconstitutional.  His conclusory allegation that Defendants lacked authority to issue restitution orders is insufficient to survive Defendants' motion to dismiss.

[6] This appears correct in this case.  According to Plaintiff, his prison account is composed of "state pay, money order[s and] jay pay."  (Third Amend. Compl. at 22.)  There is no indication that Plaintiff's account contained funds in violation of any law or regulation.  *See, e.g., Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (finding no protected property interest in money order received from another inmate's family member in violation of institution regulations).

violated because he did not receive the numerous procedural protections generally present in a criminal trial. For example, he claims he was entitled to presentment of an indictment by a grand jury, a jury trial, a bench trial, and that due process requires proof of his guilt beyond a reasonable doubt. (*See* Third Amend. Compl. at 6, 8-9.)

Defendants correctly note that an inmate in a disciplinary hearing enjoys only the most basic due process rights. (Mot. at 10.) "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). At a prison disciplinary proceeding, due process requires only that the inmate receive 1) advance written notice of the disciplinary charges; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Id.* at 563-67; *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

Plaintiff's allegations regarding denial of his rights to an indictment, a jury trial, a bench trial, burden of proof beyond a reasonable doubt, and other protections inherent in criminal trials, do not state a claim for a violation of due process in his disciplinary proceedings. However, Plaintiff also makes allegations regarding Defendant Richter's handling of the disciplinary proceedings that do suggest a violation of *Wolff*'s due process requirements. Plaintiff alleges that Defendant Richter violated his due process rights by not "affording [him] the full opportunity to verbally argue [his] defense theory of the case, to challenge the amount owed." (Third Amend. Compl. at 13.) Plaintiff claims,

(11). William Richter Doe #5 has strikingly told me, that if I don't be quiet that he
will have the officer's [sic] escort me by force, and . . . and [sic] conduct the prison
hearing without me, as I tried to plea my case. I'v [sic] tried to explain my due
process rights, and, he said
(12). . . . that he is not gonna ask me again, as he said that, I saw from the corner of
my eye's [sic] the other officer's [sic] approach me in the manner in wich [sic] they
were gonna escort me out. But I said I'll be quiet, and just sat there, and plead not
guilty to the incident and hoped for the best;
(13.) I allso [sic] like to add that he said the only way I could say something is if I
plead either guilty, or guilty with an explanation, only opone [sic] ground's [sic] that
has [sic] to do with me admitting guilt!

(*Id.* at 13-14.) Plaintiff further claims that, because he could not say anything, he was afraid to ask

for evidence to question witnesses. (*Id.* at 14.) He alleges that it could "result in COPD charges like

disobeying staff directions." (*Id.*) Moreover, Plaintiff argues that Defendant Richter "violated my

righ [sic] to 'free speach' [sic], and righ [sic] to express my beliefs, [sic] and theory of the write up

against me by forcing to remain silent and allowe [sic] the case to proceed." (*Id.*) Finally, Plaintiff

summarizes his allegations in a list of complaints alleging that Defendant Richter

(22). . . . violated my 'basic due process' rights to a 'fair hearing' because he
wouldn't allowe [sic] to say anything, wich [sic] in turn denied my other right's [sic]
to offer my defense theory of the case against me;
(23). further he denied my right to request for 'evidence' such as reciepts [sic] to to
[sic] the destroyed property, so that I could validate not only the price value, but
authenticity of the "shap" [sic] of the product destroyed etc;
(24). further he denied my right to challenge the amount of restitution owed that they
'charged' me with (without) (due process of law)
        . . . .

(26). I'm entitled to relieff [sic] on this ground. Because I was denied my right my
right to a fair hearing, because I wasn't given the opertunity [sic] to be heard, let
allone [sic] gather evidence of receipts etc.

(*Id.* at 15.)

Defendants do not make any argument with regard to these allegations in Plaintiff's complaint. Taking these allegations as true, they plausibly suggest that Plaintiff was not afforded the opportunity required by *Wolff* "to call witnesses and present documentary evidence in his defense." 418 U.S. at 566. Accordingly, Plaintiff's due process claim against Defendant Richter survives Defendants' motion to dismiss.

To the extent Plaintiff brings due process claims against other Defendants, they fail due to Plaintiff's failure to allege facts showing personal participation by any other Defendant. Personal participation is an essential allegation for a § 1983 claim. *Bennett v. Passic*, 545 F.2d 1260, 1262–1263 (10th Cir. 1976). To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

In terms of personal participation, Plaintiff claims that Defendant Jones is liable because she is in control of the COPD Disciplinary Board and inmate banking and "makes sure inmates receive sanctions and makes sure money gets taken out." (Third Amend. Compl. at 17.) Similarly, he claims that Defendant Zavaras is responsible for COPD Disciplinary Board operations and the sentencing operations that resulted in the violation of Plaintiff's rights. (*Id.*) Finally, Plaintiff urges the court to read all claims against Defendant Richter against Defendant Pocheco as well. (*Id.* at 16.) Plaintiff has not alleged facts to suggest personal participation by Defendants Pocheco, Jones

or Zavaras in the alleged due process violation. Neither Defendant Jones nor Defendant Zavaras may be held liable under § 1983 for their supervisory role in the disciplinary process. Although Plaintiff urges the court to apply his allegations against Defendant Richter to Defendant Pocheco, the complaint does not provide a basis for doing so. Plaintiff complains that Pocheco is the one who "process [sic] the disciplinary write ups to the hearing officer but he allso [sic] request certain sanctions [P]enalties against me" and that, "because of his involvement in the COPD-disciplinary penalty, he allso [sic] deprived every right raised." (*Id.* (brackets in original).) He makes no allegations against Defendant Pocheco regarding the denial of an opportunity to be heard and present evidence as he did against Defendant Richter. Plaintiff has failed to allege personal participation by other Defendants in the alleged due process violation and, therefore, the claims against them should be dismissed.

### 3. Takings Clause and Garnishment Claims

In Claims Two and Three, Plaintiff asserts that the withdrawal of money from his prison account pursuant to the restitution orders constitutes a taking without due process. (*Id.* at 22, 23.) He argues that Defendants are permitted to withdraw only twenty percent from his inmate account for court ordered restitution, and that he is only required to pay off "one case at a time" and that "the rest go's [sic] to me for personal use that cannot be taken away without due process of law." (*Id.* at 22.) Nevertheless, he alleges, the inmate banking Defendants withdraw one hundred percent of his money for restitution "that isn't authorized [or] legally imposed." (*Id.*) Plaintiff claims that the withdrawal of all his money "without just compensation violates the takings clause." (*Id.*) He also asserts that "a Garnishment is a [court precedent] for only [court ordered restitution] only!! therefore

other due process procedures must be met" and that he is "entitled to relieff [sic] because I was not legally garnished under prescribed statutes, and . . . I was garnished without due process of law." (*Id.* at 23 (brackets in original).) Claims Two and Three thus appear to involve elements of both a takings claim and a due process claim.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Its purpose "is to prevent the government from forcing some people alone to bear public burden which, in all fairness and justice, should be borne by the public as a whole." *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 718 (10th Cir. 2004) (citation omitted). "It is clear that the debiting of funds from [a prisoner's] account in satisfaction of a properly imposed restitution order does not amount to a taking or other wrongful interference with a property interest." *Barber v. Wall*, 66 F. App'x 215, 216 (1st Cir. 2003). To the extent that the restitution orders were properly imposed, Plaintiff has failed to state a claim under the Takings Clause. To the extent that Plaintiff's claim rests on an argument that the restitution orders were improper, it is a due process claim, which also fails, although not for the reasons Defendants suggest.

Defendants urge that, in order to state a viable claim for the deprivation of the right of due process as a result of the alleged taking of property, a plaintiff must show that there was no meaningful postdeprivation remedy for the loss. (Mot. at 5 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).) Defendants contend that, because the state has provided an adequate postdeprivation remedy, Plaintiff's takings claim is not cognizable under § 1983. (*Id.* at 7.)

14

Defendants misapply *Hudson* to the facts of this case. In *Hudson*, the Supreme Court considered what process is due in relation to the intentional deprivation of property. 468 U.S. at 530-31. The Court concluded that the an unauthorized intentional destruction of property by a state employee does not violate due process if the state provides a meaningful postdeprivation remedy. *Id.* at 533. The Court also noted that "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Id.* at 532. Defendants do not deny that the restitution orders resulted from established state procedure and even cite the applicable CDOC Administrative Regulation. (*See* Mot. at 6.) Defendants' reliance on *Hudson* and assertion that postdeprivation remedies are available, is inapposite. Nevertheless, as described in Section 2 herein, Plaintiff has failed to state a due process claim, except as to Defendant Richter.

### 4. *Eighth Amendment Claim*

Subsidiary to Plaintiff's takings claim, he also appears to assert an Eighth Amendment claim for cruel and unusual punishment. He alleges that the withdrawal of all the money from his prison account "le[aves] me with nothing to use for myself to buy hygien [sic], stamps, envelopes, etc. that is truly essential for everyday prison life" and "forc[es] me to live in severe poverty" and "makes it extremely hard to survive and buy stamps, etc. [and] makes it hard to live in sanitary conditions and limits my right to [indecipherable] to my family wich [sic] does burden every day prison life." (Third Amend. Compl. at 22.)

A prisoner claiming an Eighth Amendment violation must establish, objectively and subjectively, that particular conditions of confinement are cruel and unusual. *Wilson v. Seiter*, 501

U.S. 294, 297-98 (1991). To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to constitute an Eighth Amendment violation. *Id.* at 298. To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." *Id.* at 837.

In some circumstances, the deprivation of hygiene items can constitute an Eighth Amendment violation. *See, e.g.*, *Whitington v. Ortiz*, 307 F. App'x 179, 189 (10th Cir. 2009) (finding Eighth Amendment claim where prisoner alleged he was forced to choose between paying expenses of constitutionally protected litigation and purchasing personal hygiene items)*; Penrod v. Zavaras*, 94 F.3d 1399. 1406 (10th Cir. 1996) (holding prisoner's allegations regarding officials' refusal to provide items, including toothpaste, that "caus[ed] his gums to bleed and recede and tooth decay," stated a claim under the Eighth Amendment). The deprivation must be sufficiently serious so as to deny "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment." *Whitington*, 307 F. App'x at 187 (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Moreover, a deprivation of hygiene items without any corresponding injury would not give rise to an Eighth Amendment claim. *Whitington v. Ortiz*, 472 F.3d 804, 808 (10th Cir. 2007). "An inquiry into the conditions of confinement by necessity relies

on the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (citation and quotation omitted). In general, minor deprivations suffered for short periods do not rise to an Eighth Amendment violation, while "substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite shorter duration." *Id.* (citation and quotation omitted).

Plaintiff has not alleged sufficient facts to state a claim under the Eighth Amendment. The inability to buy stamps and envelopes clearly does not constitute cruel and unusual punishment, and his bare assertions that the withdrawals made it "extremely hard to survive" and "hard to live in sanitary conditions," without specific factual support, are insufficient to survive dismissal under Rule 12(b)(6). Plaintiff has not alleged any physical injury and provides no information regarding the nature, extent or duration of time that he lacked funds, due to the restitution withdrawals, to purchase hygiene items.[7] Nor has Plaintiff demonstrated that Defendants were deliberately indifferent to a substantial risk of serious harm. Plaintiff has made no allegations regarding a serious risk or the Defendants' state of mind with regard to any risk. Accordingly, Plaintiff has failed to state an Eighth Amendment claim.

In sum, Plaintiff has failed to state a claim under the Fifth, Eighth, or Fourteenth Amendments against any Defendant, except against Defendant Richter. As to Defendant Richter,

---

[7] Although the record does not specify, the term "restitution" implies that Plaintiff is paying for damaging or depriving CDOC of something. A reciprocal deprivation of some of the privileges money can purchase would likely be part and parcel of the discipline.

Plaintiff has alleged sufficient facts to suggest a plausible due process claim arising out of Defendant Richter's handling of the disciplinary proceedings that resulted in the restitution orders of which Plaintiff complains. While Defendant Richter is entitled to Eleventh Amendment immunity from suit in his official capacity for monetary damages, the Eleventh Amendment does not bar Plaintiffs' request for prospective equitable relief or his claim against Defendant Richter in his individual capacity.

### 5. *Compensatory Damages under the PLRA*

Defendants assert that Plaintiff cannot recover compensatory damages because he has failed to allege a physical injury as required by 42 U.S.C. § 1997e(e). (Mot. at 12-13.) Section 1997e(e) of the PLRA provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying § 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Although § 1997e(e) bars recovery for mental or emotional injury damages absent an allegation of physical injury, it does not bar recovery of nominal damages, punitive damages, or declaratory or injunctive relief. *See id.* at 878-79, 880-881 (nominal and punitive damages available absent a showing of actual injury); *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 808 and n.6 (10th Cir. 1999) (nominal damages and equitable relief not barred by PLRA).

Plaintiff seeks compensatory damages in the amount taken from his account for restitution payments. He has not alleged any physical injury. His claim for compensatory damages is therefore barred by the PLRA. However, he may still pursue nominal and punitive damages and equitable relief.

## 6.    *Qualified Immunity*

Lastly,         Defendants argue that Defendant Richter is entitled to qualified immunity from suit in his individual capacity.[8] (Mot. at 13.) The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). Whether raised on summary judgment or by motion to dismiss, once asserted, the burden shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional or statutory right and 2) that the federal right was clearly established at the time of the challenged conduct. *PJ*

---

[8] Defendants argue that all Defendants are entitled to qualified immunity from suit in their individual capacities. Because Plaintiff has only stated a claim as to Defendant Richter, the court will only consider the qualified immunity argument as to Defendant Richter.

*ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief. *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010). Moreover, "once the defense has been raised, the court must allow the plaintiff the limited opportunity allowed in Fed. R. Civ. P. 12(b)(6) and 56 to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Losavio*, 847 F.2d at646.

As previously described, Plaintiff has alleged facts which plausibly suggest that Defendant Richter did not afford Plaintiff the opportunity required by *Wolff* "to call witnesses and present documentary evidence in his defense." Accordingly, Plaintiff has satisfied his burden to show the plausible violation of a federal constitutional right. Moreover, the due process requirements for a disciplinary proceeding have been clearly established since the Supreme Court decided *Wolff* in 1974. Plaintiff has thus met the second part of his burden as well and Defendant Richter has not established qualified immunity at this point in the proceedings.

In conclusion, Plaintiff has stated a due process claim against Defendant Richter. He may pursue prospective equitable relief against Defendant Richter in his official and individual capacity and nominal and punitive damages against Defendant Richter in his individual capacity. He is barred by the Eleventh Amendment from pursuing monetary damages against Defendant Richter in his official capacity and barred by the PLRA from pursing compensatory damages. Defendant Richter is not entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, the court respectfully **RECOMMENDS** that

1) "Defendants' Motion to Dismiss Plaintiff's Third Amended Prisoner Complaint" (Doc. No. 47) be GRANTED IN PART and all claims against Defendants Zavares, Jones, Pocheco, Hunter and John or Jane Doe # 6, #7, #8, and #9 be dismissed;

2) "Defendants' Motion to Dismiss Plaintiff's Third Amended Prisoner Complaint" (Doc. No. 47) be DENIED as to Plaintiff's due process claim against Defendant Richter, EXCEPT insofar as Plaintiff seeks compensatory damages; and

3) Plaintiff's compensatory damages claim be dismissed.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573,

579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 16th day of August, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge